IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Ri'Cha ri Sancho, ) | |
| ) | C.A. No. 8:15-1353-HMH-KFM |
| Plaintiff, ) | |
| ) | **OPINION & ORDER** |
| vs. ) | |
| ) | |
| Anderson School District Four, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Ri'Cha ri Sancho ("Sancho"), proceeding pro se, filed a complaint against Anderson School District Four (the "District") asserting the following employment discrimination claims: disparate treatment, hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). In addition, Sancho alleges a state law claim for defamation.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Sancho is an African-American female who practices a traditional African religion. (Def. Mot. Summ. J. Ex. 10 (Pl. Dep. 11, 215), ECF No. 34-10.) She began working for the District as a substitute teacher during the 2004-2005 school year, and was hired by the District in

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit it with instructions. 28 U.S.C. § 636(b)(1).

1

August 2005 as a business teacher at Pendleton High School ("PHS"). (Id. Ex. 6 (Merck Aff. ¶¶ 2-3), ECF No. 34-6.) Sancho transferred schools within the District after accepting a position at Riverside Middle School ("RMS") for the 2007-2008 school year. (Id. Ex. 10 (Pl. Dep. 39), ECF No. 34-10.) In July 2013, Sancho requested and was granted an unpaid leave of absence for the 2013-2014 school year from the District's Board of Trustees. (Id. Ex. 9 (D'Andrea Aff. ¶¶ 10-11, Exs. I, J), ECF No. 34-9.) There is no evidence that Sancho returned to her teaching position with the District following the 2013-2014 school year. Sancho's stated reason for requesting a leave of absence was "to study for the first year of [her] PhD." (Id. Ex. 9 (D'Andrea Aff. ¶ 10, Ex. I), ECF No. 34-9; Objection 44-45, ECF No. 56.) However, Sancho submits that the underlying reason was due to her several complaints of discrimination, hostile work environment, retaliation, and defamation at PHS and RMS, all of which were not resolved to her satisfaction. Sancho alleges that she "considered this request [for a leave of absence] her only recourse to avoid breaking her contract, but felt the safety of her family and herself was of the utmost important." (Objections 45, ECF No. 56.)

Sancho subsequently filed a request for unemployment benefits, which was denied. (Def. Mot. Summ. J. 7, ECF No. 34.) Additionally, Sancho filed a charge of discrimination with the Equal Employment Opportunity Commission, which was dismissed on the basis that it was unable to conclude any violations of statutes had occurred. (Id., ECF No. 34; Ans. Special Interrogatories, ECF No. 16.)

Sancho filed the complaint in this action on March 24, 2015. (Compl., generally, ECF No. 1.) On November 4, 2015, the District filed the instant motion for summary judgment. (Def. Mot. Summ. J., ECF No. 34.) Sancho responded on December 11, 2015. (Resp. Opp'n Def. Mot. Summ. J., ECF No. 38.) On December 21, 2015, the District replied. (Reply Supp.

2

Def. Mot. Summ. J., ECF No. 42.) Magistrate Judge McDonald issued his Report and Recommendation on June 20, 2016, recommending that the District's motion for summary judgment be granted. (Report & Recommendation 26, ECF No. 47.) Sancho filed objections on July 25, 2016. (Objections, ECF No. 56.) Additionally, on June 30, 2016, the mediator filed a motion to compel Sancho to pay mediation fees. (Mot. Compel, ECF No. 50.) Sancho failed to respond within the deadline for filing a response to the motion to compel. This matter is now ripe for review.

## II. THE REPORT AND RECOMMENDATION

First, Magistrate Judge McDonald recommends granting the District's motion for summary judgment on the Title VII disparate treatment claim, because Sancho failed to establish essential elements of a prima facie case of disparate treatment that a materially adverse employment action or that an alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination. (Report & Recommendation 15-19, ECF No. 47.) Similarly, the magistrate judge recommends granting summary judgment, because Sancho failed to show that other similarly situated employees received more favorable treatment, which is a required element of a prima facie case of disparate treatment through discriminatory discipline. (Id. 19-21, ECF No. 47.) Second, Magistrate Judge McDonald recommends granting the District's motion for summary judgment on the Title VII hostile work environment claim, because there is no evidence that any of the alleged conduct was based on Sancho's race, color, religion, sex, or national origin and that the alleged harassment did not constitute severe or pervasive conduct, both of which are essential elements for a hostile work environment cause of action. (Id. 21-23, ECF No. 47.) Third, Magistrate Judge McDonald recommends granting the District's motion for summary judgment on the Title VII retaliation claim, because Sancho

3

failed to establish an adverse employment action or any causal connection, both of which are required elements for a Title VII retaliation claim. (Id. 23-25, ECF No. 47.) Lastly, Magistrate Judge McDonald recommends granting the District's motion for summary judgment on the state law defamation claim, because Sancho failed to raise any genuine issues of material fact as to actual malice or that any alleged defamatory statements were made to a third party, both of which are required elements for a defamation cause of action. (Id. 25-26, ECF No. 47.)

### III. OBJECTIONS

Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Sancho did not file any objections to the defamation claim. Thus, the court adopts the magistrate judge's recommendation to grant summary judgment on the state law defamation claim.

However, Sancho raised objections with respect to her three Title VII claims. Upon review, the court finds that many of Sancho's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate her claims. However, the court was able to glean several specific objections. Sancho objects raising new allegations of discrimination and argues that her initial allegations support a new Title VII claim that was not considered by the magistrate judge.

As an initial matter, when a party objecting to a report and recommendation provides new or additional evidence, the district court's decision "whether to consider such evidence rests

4

within the sound discretion of the district court." Doe v. Chao, 306 F.3d 170, 183 n.9 (4th Cir. 2002), aff'd, 540 U.S. 614 (2004).  Further, "attempts to introduce new evidence after the magistrate judge has acted are disfavored," though the district court may allow it "when a party offers sufficient reasons for so doing."  Caldwell v. Jackson, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases).  Because Sancho is proceeding pro se and out of an abundance of caution, the court will consider her new allegations of discrimination.

### IV. LEGAL DISCUSSION

#### A. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  Monahan v. Cty. of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir. 1996) (internal quotation marks and citation omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (internal quotation marks and citation omitted).

### B. TITLE VII - DISPARATE TREATMENT

"Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (U.S. 2012). "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks and citation omitted). Typical examples of adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999).

First, Sancho claims she was assigned to develop a curriculum map for the Integrated Business Applications ("IBA") course, which she had taught for several years, but that this task was subsequently reassigned to a "new Caucasian IBA teacher" (the "task reassignment allegation"). (Objections 20, ECF No. 56.) Similarly, Sancho claims her transfer from PHS to RMS, i.e. from a high school to middle school level teaching position, was a "demotion" (the "school reassignment allegation"). (Id. 29, ECF No. 56.) Further, Sancho raises several instances of her courses changing during her teaching tenure, ranging from reducing her class sizes and phasing out certain courses she taught to increasing her class load and changing the credit-level of courses she taught (the "course reassignment allegations"). (Id. 27, 29-31, 33-36, ECF No. 56.) "[R]eassignment of job duties is not automatically actionable." Burlington N. &

6

Santa Fe Ry. Co. v. White, 548 U.S. 53, 71 (2006) (retaliation context).  Further, mere dissatisfaction with work assignments or reassignments does not establish an adverse employment action, especially when there is no evidence of adverse affect on the terms, conditions, or benefits of employment.  See Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004) (constructive discharge context); Monk v. Stuart M. Perry, Inc., Civ. Act. No. 5:07CV00020, 2008 WL 2901347, at *4 (W.D. Va. July 18, 2008) (unpublished) (retaliation context), report and recommendation adopted, Civ. Act. No. 5:07CV00020, 2008 WL 4450220 (W.D. Va. Sept. 29, 2008) (unpublished).

  Under these allegations, Sancho does not provide any evidence that these task, school, or course reassignments produced any injury or harm to her or equate to a "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Boone, 178 F.3d at 255.  Thus, the task reassignment allegation, school reassignment allegation, and course reassignment allegations do not establish an adverse employment action and these allegations are without merit under the disparate treatment claim.

  Second, after several unsatisfactory parent-teacher meetings that included District administrators, Sancho alleges she received letters of reprimand, which constituted adverse employment actions.  Sancho claims letters of reprimand: "generate a documented trail of behavior that can be used to promote or deny promotion to any employee"; can be examined when writing letters of recommendation; can be used as "ammunition for biased treatment"; "substantiate an atmosphere of negative impact on employees"; and "create an atmosphere of undue stress to force [an] employee to resign her position" (collectively, "letters of reprimand allegations"). (Objections 27, ECF No. 56.)  Assuming without deciding that these letters were indeed disciplinary in nature, Sancho has still failed to cite any legal precedent to support her

7

claim. As the magistrate judge cited, "[t]o the extent the letter[s] could be construed as a letter of reprimand, courts have held that letters of reprimand and admonishment are not actionable adverse employment actions." Livingston v. Wix, No. 3:13-CV-02695-JMC, 2014 WL 7369502, at *10 (D.S.C. Dec. 29, 2014) (unpublished); Johnson v. Danzig, No. 99-2614, 2000 WL 458887, at *2 (4th Cir. Apr. 24, 2000) (unpublished) ("[T]he letters of reprimand and admonishment and the denial of training are not actionable adverse employment actions . . . ."); Dawson v. United States, 549 F. Supp. 2d 736, 741-42 (D.S.C. 2008), aff'd, No. 08-1352, 2010 WL 727648, at *1 (4th Cir. Mar. 3, 2010) (unpublished). Thus, the letters of reprimand allegations do not establish an adverse employment action and these allegations are without merit under the disparate treatment claim.

Third, in the application process for a Department of Defense position, Sancho alleges she received a negative recommendation from a District administrator, which Sancho claims establishes an adverse employment action ("letter of recommendation allegation").[2] (Objections 30-31, ECF No. 56.) There is no evidence that Sancho was offered the Department of Defense position. Unlike letters of reprimand, negative letters of recommendation can establish an adverse employment action. See, e.g., Hillig v. Rumsfeld, 381 F.3d 1028, 1035 (10th Cir. 2004) (retaliation context); Taylor v. Geithner, 703 F.3d 328, 339 (6th Cir. 2013) (retaliation context); Pawlow v. Dep't of Emergency Servs. & Pub. Prot., No. 3:14-CV-1282 (CSH), 2016 WL 1170908, at *6 (D. Conn. Mar. 23, 2016) (comparing internal notices of discipline with negative external employment recommendations); but cf. Belton v. City of Charlotte, Nos. 05-1268, 05-1450, 05-1459, 2006 WL 1444394, at *14-15 (4th Cir. May 23, 2006) (unpublished) (affirming

---

[2] This letter of recommendation allegation was considered under the Title VII hostile work environment claim by the magistrate judge, but not under the Title VII discrimination claim. (Report & Recommendation 22-23, ECF No. 47.)

the lower court's holding that a failure to write a letter of recommendation did not constitute an adverse employment action in the retaliation context).

However, in her affidavit, the District administrator states that she described Sancho in the Department of Defense recommendation form as "extremely intelligent and intuitive" with "tremendous work ethic and passion for helping young people" and that Sancho would be an "asset to this program." (Def. Mot. Summ. J. Ex. 7 (Avery Aff. ¶ 4, Ex. A), ECF No. 34-7.) The District administrator does admit that she checked the box "No" in an answer to the question of whether she would reemploy Sancho, but she states this response was marked "inadvertently" and was a "mistake." (Id. Ex. 7 (Avery Aff. ¶ 4, Ex. A), ECF No. 34-7.) Under these facts, it is difficult for the court to find that this particular recommendation rises to the level of an adverse employment action. However, even assuming without deciding that this recommendation does establish an adverse employment action, the District, through the District administrator, has articulated a legitimate, nondiscriminatory reason for its action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (setting forth that when a prima facie case of discrimination has been established, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action). Moreover, Sancho has not shown by a preponderance of the evidence that the District's reason was not true, but a pretext for discrimination. Id. at 253 (setting forth that if the defendant carries their burden, the plaintiff has an opportunity to prove by a preponderance of the evidence that the defendant's reason was not true, but a pretext for discrimination). Thus, this letter of recommendation allegation does not establish an adverse employment action and this allegation is without merit under the disparate treatment claim.

Lastly, Sancho initially claimed she was subjected "to harsher disciplinary measures than her Caucasion counterparts." (Resp. Opp'n Def. Mot. Summ. J. 21, ECF No. 38.)

> [T]o establish a prima facie case of discriminatory discipline under Title VII, the plaintiff must show: (1) she is part of a class protected by Title VII; (2) her prohibited conduct was comparably serious to misconduct by employees outside the protected class; and (3) the disciplinary measures taken against her were more harsh than those enforced against other employees.

Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, No. 08-1090, 2009 WL 667421, at *2 (4th Cir. Mar. 13, 2009) (unpublished) (citing Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993)). "An allegation of discriminatory discipline however, does not necessarily require proof of an adverse employment action." Id. The magistrate judge recommends granting the District's motion for summary judgment on this discriminatory discipline claim, because Sancho "failed to present evidence that permits the necessary comparison." (Report & Recommendation 20, ECF No. 47.)

In her objections, Sancho raises several instances of disciplinary comparison (the "disciplinary comparison allegations"). (Objections 17-19, 25, ECF No. 56.) However, in most of these instances, Sancho has failed to present evidence that permits the necessary comparison. Further, to the extent that letters written by supervisors summarizing Sancho's various interactions with administrators and parents can be considered disciplinary measures, these letters were written in response to her argumentative and defensive responses to incidents rather than the underlying events. Sancho alleges that when another Caucasian teacher referred to African-Americans as "thugs" in front of an African-American student, this teacher was not reprimanded, but was forced to apologize to the parent of the student the same day. (Id. 24-25, ECF No. 56.) Sancho compares this alleged disciplinary measure to the alleged one she received by the District after attempting to enter the District Office. (Id. 25, ECF No. 56.) In

the 2012-2013 school year, a new policy was implemented that required District employees to show their identification card to gain entry into the District office, which was communicated to all District employees through several emails. (Def. Mot. Summ. J. Ex. 9 (D'Andrea Aff. ¶ 6), ECF No. 34-9.) On February 28, 2013, Sancho had a meeting at the District office, but the receptionist would not let her enter, because she did not have her identification card. (Id. Ex. 9 (D'Andrea Aff. ¶ 7), ECF No. 34-9; Objections 25, ECF No. 56.) The receptionist reported to the District superintendent that Sancho was rude to her when she told Sancho that she had to have identification to enter the District office. (Def. Mot. Summ. J. Ex. 9 (D'Andrea Aff. ¶ 7), ECF No. 34-9.) In response, the District superintendent sent an email to all District employees informing them that entry into the District office required showing their identification card and that rudeness would not be tolerated. (Id. Ex. 9 (D'Andrea Aff. ¶ 7), ECF No. 34-9.) The District superintendent did not include Sancho's name or otherwise identify her in the email. (Id. Ex. 9 (D'Andrea Aff. ¶ 7), ECF No. 34-9.) These two events are not comparable. The former incident was an internal school event while the latter is a District event, and more fundamentally, the court finds that this email does not establish a disciplinary measure against Sancho. Ultimately, Sancho has failed to show that any other employee of a different race, religion, gender, or national origin received more favorable treatment under similar circumstances. Based on the foregoing, the disciplinary comparison allegations are without merit under the disparate treatment claim.

### C. TITLE VII - HOSTILE WORK ENVIRONMENT

The elements of a hostile work environment claim under Title VII are: (1) harassment on the basis of race, color, religion, sex, or national origin; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment

11

and create an abusive atmosphere; and (4) some basis exists for imputing liability to the employer.  See E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009).  The hostile or abusive nature of the work environment is "determined only by looking at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Sancho asserts various allegations previously discussed, including the task reassignment allegation, school reassignment allegation, course reassignment allegations, letters of reprimand allegations, and disciplinary comparison allegations.  (Objections 43, ECF No. 56.)  Further, Sancho also asserts that she received an email informing her that her pay would be docked for incremental sums totaling over $1,000 after pursuing a grievance with a District administrator (the "docked pay allegation").[3]  (Id. 44, ECF No. 56.)  However, the District has proffered evidence establishing that this email was sent to several employees and was subsequently retracted.  (Def. Mot. Summ. J. Ex. 7 (Avery Aff. ¶ 5), ECF No. 34-7.)  Ultimately, none of the allegations evidence any physically threatening or humiliating conduct, or much less a mere offensive utterance.  Further, none of the allegations unreasonably interfered with Sancho's work performance or were severe.  Further, Sancho has failed to establish that any of these allegations were conducted on the basis of her race, color, religion, sex, or national origin.  Based on the foregoing, Sancho's objections are without merit and she has failed to establish a hostile work environment claim.

---

[3] This docked pay allegation was considered under the Title VII retaliation claim by the magistrate judge, but not under the Title VII hostile work environment claim.  (Report & Recommendation 24, ECF No. 47.)

### D. TITLE VII - RETALIATION

The elements of a prima facie case of retaliation under Title VII are: (1) a plaintiff engaged in protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) that a "causal relationship existed between the protected activity and the adverse employment activity." Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 253 (4th Cir. 2015).

Sancho asserts two allegations previously discussed, the course reassignment allegations and task reassignment allegation. (Objections 45-46, ECF No. 56.) As previously stated above, these allegations fail, because there was no adverse employment action. Sancho also complains that the District granted her "request for a leave of absence without requesting documentation of planned studies, proof of enrollment in a documented doctoral program, or field of study," which prompted Sancho "to believe the [District] was on a course to force her to resign her post." (Objections 47, ECF No. 56.) The court finds that the grant of Sancho's request for a leave of absence was not an adverse employment action. Therefore, Sancho's objections are without merit and she has failed to establish a Title VII retaliation claim.

After a thorough review, the court adopts Magistrate Judge McDonald's Report and Recommendation and incorporates it herein by reference. Based on the foregoing, the court grants the District's motion for summary judgment on all claims.

### E. MOTION TO COMPEL PAYMENT OF MEDIATOR'S FEES

Lastly, on June 30, 2016, the mediator that conducted the mediation filed a motion to compel Sancho to pay mediation fees. (Mot. Compel, ECF No. 50.) Sancho failed to respond within the deadline for filing a response to the motion to compel. According to the mediator, Sancho was responsible for $975.63 of the mediation fee and Sancho still owes the remaining

balance of $895.63 after more than six months have passed since the mediation conference. (Id., ECF No. 50.) The court grants this motion to compel payment of mediator's fees.

Therefore, it is

**ORDERED** that the District's motion for summary judgment, docket number 34, is granted. It is further

**ORDERED** that the mediator's motion to compel payment of mediation fees in the amount of $895.63, docket number 50, is granted.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
August 3, 2016

### NOTICE OF RIGHT TO APPEAL

The Plaintiff is hereby notified that she has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

14